**John Perry MILLER et ux., Appellants,**

v.

**Charles L. SCHUMAN, d/b/a Bonanza Mobile Homes Subdivision, Appellee.**

No. 6601.

Court of Civil Appeals of Texas, El Paso.

Aug. 24, 1977.

Rehearing Denied Sept. 14, 1977.

Schwartz & Earp, Robert D. Earp, El Paso, for appellants.

Edward C. Hughes, El Paso, for appellee.

## OPINION

WARD, Justice.

This suit was filed by the Plaintiffs under the terms of Section 27.01, Tex.Bus. & Comm.Code Ann., to recover their alleged actual and exemplary damages sustained in their purchase of a mobile home lot. The trial Court granted the Defendant's motion for an instructed verdict when the Plaintiffs rested. We affirm.

The Plaintiffs, John Perry Miller and wife, Lola N. Miller, purchased the mobile home lot in November, 1971, from Charles L. Schuman, d/b/a Bonanza Mobile Homes Subdivision. Their trial pleadings alleged that prior to the purchase, the Defendant's agent had falsely represented that the Subdivision had good water; that this representation was false as the water was not potable and was substandard and in violation of the State Health Department's standards for potability; that the Defendant's agent had further falsely represented to them that the Defendant would supply as much water as would be needed to the lot for a standard monthly fee for as long as the Plaintiffs owned the lot; and that the value of the lot as represented was $4,227.00, and actually was virtually worthless due to the poor quality of the water and the secret intention of the Defendant to discontinue the water service. They sued for their actual damages in the amount of $4,227.00 and for their exemplary damages under the Statute not to exceed twice the amount of the actual damages.

The directed verdict presents the no evidence point and the rules for our appellate review are well summarized in *Campbell v. Booth*, 526 S.W.2d 167 (Tex.Civ.App.—Dallas 1975, writ ref'd n.r.e.). We will accept as true the evidence in the record supporting the Appellant's allegations both of fraud and damages, and will disregard all evidence to the contrary. That case points out that the Courts allow a wide latitude in determining the issue of fraud which can be deducible from artifice and concealment, as well as from affirmative conduct. Even under those prescribed rules, the defects in the evidence in this case are obvious.

The Plaintiffs, on November 1, 1970, went to the mobile home Subdivision to secure a rental lot. The available water came from two wells located on the Subdivision. In inquiring of a rental lot, one of the Defendant's salesmen, a Mr. John Knopp, referred them to a lot which was owned by a Mrs. Ludy. They inquired of Mr. Knopp as to the water, and he told them that the water was good for the two years that he had been there. The Plaintiffs then rented the mobile home lot from Mrs. Ludy for a period of some eleven months. In September, 1971, they ascertained that the lot directly across from theirs was available for sale due to the death of one of the owners. They contacted the widow, but due to the estate problems involved were unable to purchase the lot directly from her. In securing the necessary conveyance, it was necessary for the Defendant to foreclose on the deed of trust securing the note on the lot owned by the decedent and the widow. Thereafter, the Defendant was able to convey the lot to the Plaintiffs. Admittedly, no oral representations regarding the water were made to the Plaintiffs at that time. However, at that time, the Plaintiffs did know of advertisements indicating that the water from the wells in the Subdivision would be available to the lot owners for a fixed monthly fee. In addition, at the time of the original leasing, Knopp had stated to the Plaintiffs that they could have all the water they wanted for a flat rate fee a month. After the sale, the Plaintiffs became aware that representatives of the State Health Department had complained to the Defendant that the drinking water at the Subdivision was

substandard. At no time before the sale had the Defendant ever disclosed that he was receiving these complaints.

As to the purchase of the lot, the Plaintiffs' evidence was that they bought the lot in November, 1971, at the price of $4,227.00, and in January, 1974, they sold the lot for $3,250.00.

The Plaintiffs argue that the representation regarding the good water made by Knopp was imputable to the Defendant as Knopp was his regular salesman and the Defendant eventually benefited from the representation because of the purchase that was made of the lot a year later. The argument ignores the admission made by the Plaintiffs in their testimony that Knopp was acting for Mrs. Ludy at the time of the rental agreement and that they knew that he was not acting for the Defendant.

Regarding the representation that water would be furnished by the Subdivision owner to the lot owner, there was testimony that the Defendant wanted to cut the water supply off and let the lot owners purchase their water from the City of El Paso. This so-called threat was later withdrawn, the water was not cut off, and the Plaintiffs were assured that they would be furnished water as long as they owned their lot.

As to the claim of the Plaintiffs that the water was not potable, the only evidence offered by the Plaintiffs was from a representative of the State Health Department who admitted that there were no Health Department standards regarding potability, and that the water, though undesirable, was potable at all times. He did criticize the water as containing excessive amounts of sulphate and chloride solids over amounts which the Health Department recommended. In summary, he testified that the water met all bacteriological standards regarding coloform organisms; that the excessive amounts of the chemicals made the water undesirable, but that it was not unfit; and that the water was potable.

Finally, there was no proof under either the statutory or common law measure of damages by which the trial Court could have rendered a judgment in favor of the Plaintiffs. The common law or "out of pocket" rule for damages recoverable by a defrauded purchaser of property was the difference between the value of that which he parted with and the value of that which he received under the agreement. The more liberal measure was designed to allow the victim the "benefit of the bargain" and is now codified as Section 27.01(b), Tex.Bus. & Comm.Code Ann. There, the measure is the difference between the value of the real estate as represented and its actual value in the condition in which it was delivered at the time of the contract. No evidence was offered as to the value of the real estate which the Plaintiffs purchased, nor to the value of the real estate as represented, nor as to the value at the time it was delivered. Special damages were neither alleged nor proven. There was no basis in law by which the trial Court could have rendered a judgment for the Plaintiffs. *Frey v. Martin,* 469 S.W.2d 316 (Tex.Civ.App.—Dallas 1971, writ ref'd n.r.e.).

The judgment of the trial Court is affirmed.